I'm Donald Falk. I represent the appellant Tim Wee. The injunction in this case, the preliminary injunction in this case, prohibits Tim Wee from making any comments that could be construed to disparage a possible trademark and logo asserted by the Freecycle Network or TFN. Was this case brought under the Lanham Act? In part, yes, Your Honor. Is there any trademark disparagement claim allowed under the Lanham Act? No, Your Honor. There is no such animal under the Lanham Act. What other theories was the case brought under other than Lanham Act? There were some, as I recall, there was a contributory, well, that's Lanham Act as well, contributory infringement theory. There were some state law torts. The only basis cited by the district court in its preliminary injunction, and the only basis on which TFN has attempted to defend the preliminary injunction, is the Lanham Act. And there, Your Honor, there just isn't such a thing as trademark disparagement. The only case cited below was one that talked about state law theories. And although a couple of district courts have noted that people have pleaded such claims, no one has ever explained how the language or the logic or any, in fact, any case could support such a claim. So there is no basis. And that's one of the problems, one of the significant problems here is that what is enjoined here is nothing more than the expression of an opinion on an unsubtle legal issue, one that's being litigated here in the Northern District. And also the other conduct that is within the scope of that injunction is encouraging the perfectly lawful activity of using an asserted trademark. In fact, it's lawful to use a registered and incontestable trademark in its generic sense in casual speech, not as a trademark, not to designate a source of goods or services. That's not the kind of speech that is at issue here. This is not an infringement case. Counsel, I'm troubled by the lapse of time here. The injunction apparently was issued on May 11, 2006, and yet we're only getting to argument on August 15, 2007. Was there any effort made to accelerate this on the docket? PIs normally have precedence, do they not? Your Honor, there are two reasons I think this case did not move so quickly. First, we moved for a stay, and it was stayed almost immediately. Second, there was an extensive mediation process under the auspices of this Court. I wasn't personally involved in that, but I believe there were at least three sessions, maybe five. So those are the two. So the stay is in effect right now? Yes, Your Honor, the stay is in effect. Okay. By our court or the district court? By this Court, Your Honor. It was a stay. We moved for a stay pending appeal, which was granted quite some time ago. That explains the passage of time. Thank you, counsel. And I do, as I say, Your Honor, there was an effort to mediate this case, which I think explains much of that time as well. If the panel were to conclude that there's no action, no colorable action for trademark disparagement under the Lanham Act, what does that do to the justification for the injunction? It removes it, Your Honor. That's the only justification that was cited here. And there's no ‑‑ I don't think there's any plausible basis for the injunction that's left. Certainly nothing that was identified in the district court or, I should say, adopted by the district court. Well, then let me ask a question and make clear in asking it that you're perfectly free to say no to the question that I'm about to ask. Would you be willing to sit down and let the other side explain the justification for the injunction and save any remainder of your time for rebuttal? Certainly not. And you can disagree with that if you like. Certainly. I'd be happy to ‑‑ I'd be happy to reserve the remainder of my time for rebuttal. We'll see what comes up. Thank you. Even the presiding judge will agree with that suggestion. Sorry. Sorry, Judge O'Scanlan. I should have looked in your direction first. No problem. No problem. Let's hear from the other side. May it please the Court, Paul Andre for the plaintiff and appellee, the Free Soccer Network. To answer Your Honor's question, the justification for the preliminary injunction is clearly spelled out in the preliminary injunction order itself. The likelihood of success on the merits of the case address three causes of action that were pled in this case, trademark infringement, unfair competition, and trademark disparagement. Those are the justifications and the reasonable likelihood of success on the merits a district court judge found to be the basis for issuing the injunction. But your complaint is based on Section 43A of the Lanham Act. In part, it is. That's correct. And 43A of the Lanham Act allows for trademark infringement, unfair competition under the guise of false advertisement. And we believe also that you could also make both a common law trademark disparagement and also a 43A trademark disparagement claim based on the current case law, citing specifically Perfect Ten. What's your best case, or is there any case in American jurisprudence that says there's a trademark disparagement claim under the Lanham Act? The one that would probably come closest is a case that was heard in this Court, Perfect Ten. And in that case, a Lanham Act trademark disparagement claim was brought. And the Court ---- Which Perfect Ten are you talking about? It's the Perfect Ten case that we cite in our brief. Is it the one authored by Judge Yakuda or the one authored by Judge Smith? I apologize, Your Honor. I'm not sure who authored that opinion. But it is a case that's cited in the brief that discusses the fact that there was a 12b6 motion that was brought forward to try to dismiss the Lanham Act claim, 43A claim, for trademark disparagement. And this Court declined, the Ninth Circuit declined, to set aside or find that as a 12b6 motion, or actually say that there was a color recalls of action under the 43A claim. When we're done with argument, would you provide the clerk with the citation? We will, yes. Sure. Thank you. Counsel, you mentioned that the rationale for the preliminary injunction was in the order itself. I assume you're talking about the ER-294, page 4 of the injunction order by Judge Collins? It starts on page 3 and the likelihood of success. Likelihood of success. That's correct, Your Honor. And likelihood of success, beginning on page 3 of that order, the last paragraph on that page, talks about the order established trademark infringement or unfair competition under the Lanham Act. The plaintiffs must show their defendants. It lists the cause of action. The next paragraph on page 4 talks about the disparagement claim, the cause of action. Well, that's what troubles me, because I look at that and I only see three factors in analyzed and no reference to the Sleecraft factors, which is the eight-factor test which we routinely require in preliminary injunction cases. Well, in this particular instance, the district court, relying on, I think, actually the four-factor test, I think can only address three here, looking at the likelihood of success on the merits, irreparable harm, the weighing of the harms to the parties and the public interest. With the four-factor test, I believe that the court was noted in his order, he does not spell them out in that specificity, that that's what was brought to the court or brought by the court, those weighing of those tests. Are you saying that the Sleecraft factors have no relevance in a preliminary injunction case? I'm not saying that. They were not brought up by the defendant in this case. So the defendant relied upon, really, the likelihood of success on the merits. And that's really what the judge focused on at the district court level. Isn't that the district court's affirmative obligation? I believe it's at the district court's discretion when granting preliminary injunctions that the district court can go through and try to do the eight-factor Sleecraft test or a four-factor test that the court did address, but the fact that the defendant did not bring up any factual issues or bring up those as defenses alleviated the district court from expanding on, you know, trying to put those or make a finding on those factors, since they were presumed or, I guess, stipulated in some way by the silence of the defendant. In that case, can you point to me in the Lanham Act, 15 U.S.C. 1125, that portion that allows a trademark disparagement claim? I think it would be up to the 1988 amendment. I think it would be the section A.B.1, I mean, A.1.B, talking about the ---- And that one says, in commercial advertising or promotion, misrepresents the nature, characteristics, quality, or geographic origin of his or her or another's goods, services, or commercial activities. That's correct. I think if the disparagement is specifically addressed, as it is in this case, at the trademark itself, and false statements are being made about ---- There is no mark, right? I disagree. I respectfully disagree, Your Honor. I believe there is a mark. Well, it was applied for. No. Under common law, under common law, there is a mark. There is an action for trademark infringement, even though it's not registered with the U.S.B.T.O. But there has to be certain requirements to gain those common law rights, and I don't see anywhere that where it's been established that it has met those requirements. That's exactly right. The fact of the matter is, it was not challenged. I mean, this is a preliminary injunction, and the record has not been, you know, fulfilled at this point. It was not challenged that it was not those factors were not obliged by. The fact of the matter is, is that this mark is inherently distinctive. It is arbitrary. All the things that are required for there to be a trademark, this mark embodies. Let's assume, for the purpose of my question, that there is a mark, and taking even a greater leap from my point of view, that there is a trademark disparagement action under the Lanham Act. What did Mr. Weed do to disparage this mark? He actually did two things. He did several things, but two that I'll address right now. The first one is, he made false statements about the mark and whether it is a protectable mark or not. Making false statements in the sense that on the extra reference of page 27, he told anyone who would listen, essentially, that this was not a protectable mark because it was not registered. He knew that registration was not required to have a protectable mark, and that's on excerpt of record on page 21, in which so. So how is that a false statement? The false statement was, he was telling the public, because there was not a registration, there was not a mark to be protected. Oh, I thought you said earlier that he was simply saying that it was never registered. No. He said there was not a protectable mark because there was no registration. He knew as a matter of fact, based on his previous communications, that registration is not required to have a protectable mark. And like I said, that's an excerpt of record on page 21. The other statement that was just false was he was stating this was a generic mark and trying to encourage other people to use it as such. He had given previous communications in which he said it was a protectable mark, that this was a protected trademark. It was a real trademark. The mere fact that he was trying to solicit people to use this mark generically would only give a fact finder one reasonable conclusion. It was not generic at that time. He was saying it's generic. What he was trying to do was to create evidence or manufacture a case for it to be generic. Would any member of the public have the right to state publicly his or her opinion that a yet-to-be-registered mark should not be protected? Sure. I think someone giving their opinion that a trademark is not a valid trademark. He has the right to that opinion. I think that's a legitimate opinion. And how about encouraging people to oppose registration before the PTO? I think that's an absolutely valid right, to ask people to oppose the registration of a trademark through the PTO. There are lawful ways to challenge a trademark. And there are unlawful ways. Well, what did we do that departed from what I just described? Well, what he did was he was trying to manufacture evidence to make the mark, to destroy the mark, to make it invalid. It wasn't he gave an opinion that, hey, I believe this mark is generic. That wasn't it. So he has no right to say to people, if you believe this right is not protected and if you believe it should not be protected, use it generically. Well, it would be ---- I just asked a question. If he were to say that, it would be a close call. I know the surrounding facts, what his state of mind was and what he knew prior to that. And so that's not the facts of this case. The facts of this case are very specific and uncontested. He was the Free Cycle Network's trademark guy. He was in charge of setting up the trademark policy, the policing of the trademark. He wrote numerous communications saying this is a valid, protected mark. The moment he becomes a disgruntled employee and gets ushered out the door, he starts a competing business and starts trying to denigrate one of the primary assets of this company, what manufacturer evidence. What did we do that would constitute a, quote, use in commerce? A use in commerce would be him going on to these public Web sites, trying to get people to use this trademark in a generic sense and to register their groups outside the Free Cycle Network using this mark. Do any of his statements mention any competing service or product? To some degree, yes. He was talking about how you can set up your own network and your own recycling group without going through the Free Cycle Network and using this mark. So, yes, he was talking about putting together competing networks and competing organizations. He was talking about doing that? He actually did it himself. He is the moderator of a competing group in Sunnyvale, and it's called Sunnyvale Free, I believe is the name of that one. Any evidence that his statements were used in commercial advertising or production? I think the statements I just mentioned would be considered commercial advertising. Going on a Web site and making the statements that he did constitutes commercial advertising or promotion? He was trying to generate support for his group and other like-minded groups. Isn't it fair to say that what he was doing was trying to generate support to oppose the registration of Free Cycle? I think that would be an unfair statement, Your Honor. Well, I think trying to oppose the registration through the TTAB or going through USPTO, that is a legitimate action by a... But going on a Web site and encouraging people to do that is not? No. If that's what he did, that would be one story, but that's not what he did. What he was trying to do was to manufacture evidence to support his case, but he also has a case in Northern District. He's in front of the United States District Court trying to make this mark, finding it generic or invalid. He also has an action before the Patent and Trademark Office. What he was doing was trying to generate evidence to support his case in Northern District, California. And that's prohibited somehow? It is if you are doing it in a way that is false and misleading, telling people that use this generically because they don't have a protective mark. When he knew, in fact, they had a protective mark, he was giving false information. It sounds more like slander of title or something like that rather than a technical violation of the copyright laws. Well, in this particular instance, the cause of action we have are the trademark infringement. Yes. It sounds to me like you brought the wrong cause of action. The trademark infringement cause of action is one of the primary causes of action. The unfair competition claims also fold into that, and the trademark disparagement under common law and under 43A would also fall into. But where's the infringing use? I don't get it. I'm sorry, but I don't get it. If he's using FreeCycle as a name of his organization, which he was, he was calling it originally FreeCycle Sunnyvale, and he's using FreeCycle in a sense to try to say that this is we are part of the FreeCycle group, you know, we are FreeCycling or whatever they want to say it. They try to make it generic by using it as a verb. He's using those statements to try to confuse the public to think this is the FreeCycle network. If you look at the actual facts in this case, Mr. Wee admitted that this was a very valuable mark. People associated this mark with the FreeCycle network and the good service and the responsible organization that it was. He was trying to associate groups that are not part of the FreeCycle network with the FreeCycle network. What's the website of your client? It's FreeCycle.org, I believe. It's not FreeCycle. Pardon me? It's not FreeCycle.org. Maybe FreeCyclenetwork.org. It could be. I'm not sure. It has a word after FreeCycle. It may. The fact of the matter is, is that at the very least, even if this is not under a 43A claim, the judge's order here is very specific. And don't engage in unlawful speech. Don't disparage the trademark. That's all the order is requiring him to do. And since this court put a stay on enforcement of that preliminary injunction, he's not engaged, to our knowledge anyway, in any unlawful speech over the past year. He understood what was required by the district court. Don't disparage this mark. The district court found this is likely to be a protectable mark. So the fact that he's abided by an injunction that is currently not binding on him, we should hold that against him? No, I don't think it should be held against me, Your Honor. But I'm just saying that he understands the scope of what the injunction requires. The scope of this injunction is very clear. It is to a very specific activity. This is not a broad sweeping injunction. It is very narrowly tailored to the very specific activity and behavior that this defendant engaged in. And since that time, he has ceased his activity. Thank you, Your Honor. Thank you, counsel. Mr. Falk, anything further? I'll try to be brief, Your Honor. The first misstatement I would like to correct is the citation to the Perfect Ten case, which is not the case that came before this Court this year. It is a district court case. It is cited in their briefs, 167F2-1114. It was not approved by this Court. There is no discussion. There is no reasoning. There is nothing but the statement that the assertion of trademark disparagement was not dismissed. There are also a few other things that I think I'd like to just mention that address some concerns of Judge Hawkins. You will search in vain any part of the district court's order or the record that supports. . . Back away just a little bit from that, Mike. A little bit closer. We're getting a reverb. Yeah. Any part of the record, much less anything cited in the briefs here, that will support anything that resembles trademark infringement by Mr. Wee or anybody else, using the word free cycle for a mark to designate the source of a good or service, there is nothing there. And the district court repeated the elements without citing any evidence. The same thing with any false advertising. There is nothing there. They don't assert it in their briefs. There is nothing in the record to support it. The argument doesn't substitute for evidence. What there was before the district court was a lot of evidence that, in fact, this word had been used generically before TFN asserted its trademark interest. Was the district court entitled to think, why don't I buy that? Well, yeah, but he wasn't entitled to preclude all public debate on the issue. Through an injunction, a prior restraint on speech wasn't entitled to do that. We are allowed in this country to dispute legal issues, including the assertion of a trademark claim. In fact, we're even allowed to criticize decisions, final decisions of the courts. We're not allowed to use a finally adjudicated trademark in an infringing manner, but that's not what's happening here. There's no evidence of that. We're allowed to change our minds. Mr. Wee, who's not a lawyer, thought one thing at one time, thought another thing at another time. Was he correct in saying that the lack of registration by itself meant they didn't have a valid trademark? Well, that may be an erroneous statement of law by itself, but what is the speech that is enjoined? Again, look at what is enjoined. It is not infringement. It is not advertising. It is disparage, something that can be construed to disparage the trademark, the validity of the trademark, which is in doubt. Frankly, it's a very doubtful trademark. Words have been used generically. That's being fought out in another courtroom, but it is certainly not something that can be removed from debate by an order of any court in the United States. As far as encouraging others to use a word in its generic sense, again, absolutely protect it. Anybody in this room can go say to somebody, would you Xerox something for me? Does Xerox like it? No. What is their recourse? It's not enjoining the use of the speech. It's persuasion. Does it work? Lots of times it does. With aspirin, it didn't. With Xerox, so far it has. If there are no further questions. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Hawkins, Wardlaw